UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PABLO TOBIAS NAVARRO,

                Plaintiff,

   -against-                                                12 CV 6663 (JMF)

PGM NEW YORK, INC. (d/b/a MADISON
BISTRO) and CLAUDE PHILIP GODARD,

                Defendants.

------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S
## RENEWED MOTION FOR CONDITIONAL CERTIFICATION

                                ERIC M. NELSON
                                Attorney at Law
                                112 Madison Avenue, Sixth Floor
                                New York, New York  10016
                                Telephone: (212) 354-3666

                                Attorney for Defendants

## **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| Table of Authorities | | ii |
| Preliminary Statement | | 1 |
| Statement of Facts | | 2 |
| Argument | | 2 |
| PLAINTIFF'S MOTION MUST AGAIN BE DENIED | | 2 |
| I. | The Applicable Law Generally | 2 |
| II. | Plaintiff Has Failed to Identify, As Required, Any Unlawful Pay Policy or Practice | 3 |
| III. | Even Had Plaintiff Been Able to Identify An Unlawful Pay Policy or Practice, He Is Not "Similarly Situated" to Any of the Other Persons Whom He Seeks to Include In the Class | 10 |
| Conclusion | | 12 |

## **TABLE OF AUTHORITIES**

| Statutes, Rules & Regulations | Page |
|---|---|
| 29 U.S.C. § 216(b) | 3 |
| 12 N.Y.C.R.R. § 137-1.4(a)(5) | 11n.9 |
| 12 N.Y.C.R.R. § 137-1.5(e) | 11n.9 |
| 12 N.Y.C.R.R. § 137-3.3(a)(4) | 11n.9 |
| 12 N.Y.C.R.R. § 137-3.4(a) | 11n.9 |

Cases

*Barfield v. New York City Health & Hosps. Corp.,*
2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 18, 2005) ............................................. 9

*Guzman v. VLM, Inc.,* 2007 U.S. Dist. LEXIS 75817 (E.D.N.Y. Oct. 11, 2007) ............ 4

*Lin v. Benihana Nat'l Corp.,* 755 F. Supp. 2d 504 (S.D.N.Y. 2010) ........ 3, 6, 8, 9, 10, 11n.9

*Mendoza v. Casa de Cambio Delgado, Inc.,*
2008 U.S. Dist. LEXIS 27519 (S.D.N.Y. Apr. 7, 2008) ............................................. 6, 10

*Monger v. Cactus Salon & SPA's LLC,*
2009 U.S. Dist. LEXIS 60066 (E.D.N.Y. July 6, 2009) ................................................. 9

*Myers v. Hertz Corp.,* 624 F.3d 537 (2d Cir. 2010) ......................................................... 3

*Prizmic v. Armour, Inc.,* 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006) ......... 3

*Realite v. Ark Restaurants Corp.,* 7 F. Supp. 2d 303 (S.D.N.Y. 1998) ........................... 3

*Urresta v. MBJ Cafeteria Corp.,*
2011 U.S. Dist. LEXIS 120126 (S.D.N.Y. Oct. 17, 2011) ......................................... 3, 6, 8, 9

**Preliminary Statement**

Plaintiff's now-renewed motion for conditional collective action certification must be denied again. Notwithstanding: (a) the express admonitions of this Court at the March 7 in-court conference herein; (b) defendant Claude Philip Godard's original opposition papers – which provided a virtual road map of what Plaintiff needed to do to address the failures and inadequacies of his original motion; and (c) the four (4) additional months which Plaintiff has also now had to solicit other purportedly similarly-aggrieved employees and/or finally obtain at least *some* supporting documentation (if, indeed, there were any of either), Plaintiff now renews his motion on virtually identical – and thus again plainly inadequate – papers and grounds.

Again, Plaintiff fails to present *any* testimonial or documentary evidence – neither a single other affiant, or piece of paper – in support of his own claims that he was not only paid improperly, but was, with others, the victim of a "common policy or plan which violated the law." That, however, is not all. Plaintiff now actually even: (a) withdraws several of the assertions he previously made; (b) contradicts several others; and then (c) simply resubmits, word-for-word, several boilerplate assertions which must have come right out of standard templates his attorneys routinely include in the affidavits and briefs they submit in support of such motions, because those assertions have absolutely no applicability to *this* case.[1]

In submitting such inadequate and repetitive papers, of course, Plaintiff himself makes clearer than Defendants ever could how utterly lacking in basis his motion itself is and, indeed, how little even he himself believes in it. His lack of care, attention and supporting detail, moreover, demonstrates how much even he recognizes that conditional certification is unwarranted here. Put another way, Plaintiff knows there's no basis for the instant motion, and so simply hasn't made any real effort – notwithstanding all the time and guidance he has already

---

[1] Indeed, Plaintiff even repeats the very same typographical errors in his current submissions as appeared in his original ones. *Compare, e.g.,* Memoranda of Law In Support of Plaintiff's Motion for Collective Action Certification, dated December 5, 2012, and March 29, 2013 (the latter, hereinafter, "Pl. Mem."), respectively, at page 6 of each ("has met them minimal burden"); ("Navarro also states and that").

received – to make the legally required showing necessary to obtain it.

Defendants PGM New York, Inc. ("PGM"), and Godard (together, "Defendants"), accordingly respectfully submit this memorandum of law, as well as the accompanying declaration of Mr. Godard, executed April 11, 2013 (the "Second Godard Declaration" or "Second Godard Decl."), in opposition to Plaintiff's renewed motion, and ask that, for all of the reasons stated both herein and therein, as well as in Defendant Godard's papers previously submitted herein in opposition to Plaintiff's original motion – the declaration of Claude Philip Godard, executed December 20, 2012 (the "Godard Declaration" or "Godard Decl."), and Defendant Godard's Memorandum of Law In Opposition, dated December 21, 2012, both of which are expressly incorporated herein by reference and made a part hereof – Plaintiff's current motion be found to be without merit, and denied.  Defendants further respectfully request that this Court award Defendants all of their attorneys' fees, costs and expenses incurred in opposing both Plaintiff's original motion, and the instant one, as well as all other and further relief in favor of Defendants, and against Plaintiff, as it deems just and proper.

## Statement of Facts

In lieu of a more formal statement of facts, Plaintiff and the Court are respectfully referred to the accompanying Second Godard Declaration for the facts relevant to the determination of the instant (renewed) motion.

## Argument

### PLAINTIFF'S MOTION MUST AGAIN BE DENIED

**I.      The Applicable Law Generally**

As he did in his original motion, Plaintiff, notwithstanding acting entirely alone in the bringing of both that (now twice-made) motion, and this action generally, nevertheless insists that there are others with claims similar to his own herein, and seeks conditional certification of this case as a collective action under the FLSA.  As previously noted, however, before any such others may be included in his purported collective "class," Plaintiff must first demonstrate that

they are, indeed, "similarly situated."  *See* 29 U.S.C. § 216(b).

> In making this showing, plaintiff[] can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members.

*Lin v. Benihana Nat'l Corp.,* 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010).  *See also Prizmic v. Armour, Inc.,* 2006 U.S. Dist. LEXIS 42627 *2 (E.D.N.Y. June 12, 2006) ("some factual showing by affidavit or otherwise must be made").  Notably, Plaintiff's burden in this regard "*cannot* be satisfied simply by unsupported assertions."  *Urresta v. MBJ Cafeteria Corp.,* 2011 U.S. Dist. LEXIS 120126 *4 (S.D.N.Y. Oct. 17, 2011) (emphasis added).  Additionally, Plaintiff must provide "some evidence of a common policy to violate the law." *Id.,* at *18.

As the discussion *infra* makes abundantly clear, however, just as he failed to do originally, Plaintiff has again not done so here.  Indeed, notwithstanding the benefit of the advice, papers, and additional time he has enjoyed since making his original motion, the only conclusion which may reasonably be drawn from the almost word-for-word identicalness of Plaintiff's current and prior submissions is not merely that he *has not*, but rather that he simply *cannot,* do so.  Put differently, Plaintiff has himself now demonstrated that *there simply is no basis upon which collective action certification can possibly be grounded here.*

**II.**  **Plaintiff Has Failed to Identify, As Required, Any Unlawful Pay Policy or Practice**

It is settled law that the evidence necessary to obtain conditional certification

> must be "sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law."

*Lin, supra,* at 509 (quoting *Realite v. Ark Restaurants Corp.,* 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998), and collecting cases); *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010).

> [T]he Court *cannot* authorize notice to current and former employees . . . even under the relatively lenient evidentiary standard [where a plaintiff] ha[s] not made the modest factual showing that [he] and the potential opt-in plaintiffs . . . were victims of a common policy or plan.

*Urresta, supra,* at *15 (emphasis added).

In making such a showing,

3

> [t]he applicable test is whether the plaintiff[] ha[s] established a sufficient "factual nexus" between [his] situation and the situation of other putative collective action members.

*Lin, supra,* at 509.

> [D]istrict courts in this circuit have looked principally to whether there are (1) "disparate factual and employment settings of the individual plaintiffs;" (2) "defenses available to defendants which appear to be individual to each plaintiff;" and (3) "fairness and procedural considerations" counseling for or against notification to the class.

*Guzman v. VLM, Inc.,* 2007 U.S. Dist. LEXIS 75817 *9-10 (E.D.N.Y. Oct. 11, 2007).

  As noted *supra*, Plaintiff here has not only sued alone, he has also submitted only his own affidavit in support of his original motion. *See generally* Complaint, dated August 31, 2012 (the "Complaint"); Affidavit of Pablo Tobias Navarro, sworn to December 5, 2012 (the "Navarro Aff."). He also failed to annex even a single supporting document – a W-2, or even a mere pay stub – as substantiation, notwithstanding his various assertions regarding the hours he claimed to have worked, and the amounts he claims to have been paid (or not paid) therefor. In renewing that motion now, nothing has changed. Plaintiff still submits only his own declaration in support, and no supporting documents. *See generally* Declaration of Pablo Navarro, executed March 29, 2013 (the "Navarro Decl.").

  This lack of substantiation was originally particularly notable because Plaintiff had worked for Madison Bistro for *eight (8) years* (*see* Navarro Decl., ¶ 3), and thus presumably had had more than ample opportunity to have obtained at least *something* that could have supported his claims. Notwithstanding now having had yet an *additional* four (4) months, Plaintiff *still* fails to provide even a scintilla of support for his allegations other than his own generalized, boilerplate assertions. Indeed, several of Plaintiff's current assertions actually conflict with assertions he made previously, or with each other, or are otherwise improper because, due to his own circumstances, they are, as demonstrated *infra*, plainly beyond his competence to have declared or affirmed.

  As with Plaintiff's original motion, though, the most significant failing of the

current one is that, notwithstanding again claiming that he knew that thirty-five (35) of his coworkers were not paid either minimum wage, or overtime (*see id.*, ¶ 21)), <u>*still* not a *single other* employee, current or former, either provides a supporting affidavit, or any other evidence or other substantiation whatsoever in support of that assertion, or any of Plaintiff's others.</u>[2]

   While Plaintiff does weakly attempt to remedy some of the insufficiency of his original affidavit by now purporting to describe the particulars of a few of his supposed "discussions," not only does no sworn statement from either of the people he now mentions ("Tomas" and "Augustin") accompany his own, he makes assertions about each of them which are plainly beyond his own knowledge. For example, Plaintiff states that he only worked until 4:00 p.m. daily (s*ee id.*, ¶ 7), but nevertheless still somehow *knows* that Tomas and Augustin regularly worked until *10:00* p.m.  *See id.,* ¶¶ 25, 28.[3]

   A careful reading of Plaintiff's declaration, like that of his original affidavit, also again makes clear that *nothing substantive at all* is actually asserted therein regarding any of his former coworkers. To be sure, Plaintiff does add several new paragraphs, but they do nothing more than repeat the same kind of vague and generalized statements that characterized his initial one. *See, e.g., id.*, ¶¶ 22 ("My co-workers often complained"); 23 ("My co-workers often complaint" [sic]); 24 ("My co-workers and I sometimes discussed"); 29 ("My co-workers were paid the same way I was").

   Moreover, even leaving aside for the moment Plaintiff's failure to present any

---

[2]  More fundamentally, it is again respectfully submitted that if – as both his original affidavit, and his current declaration, make clear – Plaintiff still cannot identify more than three of his former coworkers by more than their first name (including even the two whom he now mentions in attempting to further detail his own purported "discussions"), it is simply not credible that he actually ever "discussed and compared" wages, hours or any other aspect of their respective terms of employment with *any* of them. *See* Navarro Aff., ¶ 20; Navarro Decl., ¶ 21. In fact, and to the contrary, Plaintiff actually now *omits* his allegation regarding the "25 to 30 other coworkers" – it no longer appears anywhere in his latest sworn statement. *Compare* Navarro Aff., ¶ 21, to Navarro Decl.

[3]  He also still fails to anywhere specify: (a) what (if any) specific documents or other information he "compared" with any of the supposed other employees he "discussed" matters with; or (b) where or when any such supposed "discussions" took place.

other affidavits (particularly from any of his supposedly similarly victimized "co-workers"), none of even *his own* current averments specifically identify any of his "co-workers" who supposedly "often complained"; state whether any of them ever actually made their supposed "complaints" *to* anyone (and if so, to whom, when and/or where); or describe anything else about the purported particulars of any of them.  To the contrary, Plaintiff's only specific current statement concerning purported "complaints" is, again, only about supposed complaints *he* had (and even with regard to that statement, he states, "I never told him [Mr. Godard]").  *See id.*, ¶ 26.[4]

In any case, even if Plaintiff's claims regarding others were clear and specific, they would still be insufficient to meet his burden here.

> Where "[p]laintiff[] ha[s] averred that [he has] 'talked to people who work or have worked at [the employer]' and ha[s] 'heard' about employees [whom he now claims are similarly situated] . . . . This hearsay is insufficient to establish potential plaintiffs . . . to be victims of a common policy or plan.

*Urresta, supra,* at *15.  Such statements – to be helpful to Plaintiff in meeting his burden here – would still have had to have come from *those other potential plaintiffs themselves.*

> [F]ailure to provide affidavits from any other employees who allege they were paid below the minimum wage . . . undermines the plaintiff['s] allegation that the [employer has] a policy of violating minimum wage laws.

*Lin, supra,* at 510.

Courts, further, have found the showing required for conditional certification to not have been made where contradictions appear in the plaintiff's submissions.  *See, e.g., Mendoza v. Casa de Cambio Delgado, Inc.,* 2008 U.S. Dist. LEXIS 27519 *8-9 (S.D.N.Y. Apr. 7, 2008).  Here, *inter alia*, Plaintiff asserts in two different paragraphs of his declaration that "[o]ther employees . . . were not paid for all the hours they worked . . . ."  *See* Navarro Decl., ¶¶

---

[4]   Plaintiff also now omits to even mention his previous failure-of-notice claim.  *See, e.g.,* Navarro Aff., ¶ 14.  Previously, while nowhere actually claiming that Godard failed to *post* notices as required, Plaintiff asserted that he "never saw or received any," insinuating that they had not been.  *See id.* (Conspicuously, though, he refrained then from asserting that any other employee similarly "never saw or received" any such notices.  *See generally* Navarro Aff. ) Now, he not only still makes no direct assertion that Defendants failed to properly post notices, or that any other employee "never saw or received" any, he actually withdraws even his own prior assertion that *he* never saw or received any.  *Compare id.,* ¶ 14, and Navarro Decl.

20, 22. But just a few paragraphs later, as well as twice in his accompanying memorandum, he states precisely the contrary, to wit, that his coworkers would receive a check for their first forty (40) hours of work, and then would receive cash "for *any* work they performed above 40 hours." *See id.,* ¶ 29 (emphasis added). *See also* Pl. Mem., at 1 (employees paid in cash for "*all* hours worked above forty" (emphasis added)); and 7 ("paid separately by cash *for the time* above 40 hours" (emphasis added)).[5]

Plaintiff's current declaration, moreover, is (like his prior affidavit was) also notable for what it does *not* say. In it, for example, Plaintiff asserts that he "worked as everything from handyman, plumber, painter . . . for approximately fourteen hours per week," and for his first three years of work "also was a dishwasher," and then a "food preparer." Navarro Decl., ¶ 6. But he omits, again, to say whether any of his coworkers – to whom he would presumably like this Court to find him similarly situated, and with whom he claims to have "discussed" these matters – similarly performed any such duties in addition to their own (or indeed, performed any additional duties at all). In fact, they did not. *See* Second Godard Decl., ¶ 6.

Plaintiff also again doesn't say anything about any particular schedule (other than the 10 p.m. hour he claims to have known – even though he was long gone – Tomas and Augustin worked until), or any particular excess number of hours, any of his coworkers ever worked; what any of their regular hours were; how often (if ever) they worked any additional hours; or whether, if they ever did, they did so on any kind of regular basis. He even omits even a *conclusory* assertion that any of his coworkers worked a schedule, or number of hours, in any

---

[5] As in his original affidavit, Plaintiff also again states that "many" of his coworkers "did not know that they should have been paid these [overtime] wages." Navarro Decl., ¶ 30. But, as previously noted, if, as Plaintiff also claims, he actually "discussed and compared . . . wages" with these coworkers "to see if [they] were paid correctly" (*id.,* ¶ 21), and from such discussions he "knew" that they had not been properly paid (*id.,* ¶¶ 19, 20, 21), how could *they* not have also known? And since he again also curiously says that his coworkers "may" be afraid to pursue claims on their own (*id.,* ¶ 30), if he actually had discussed such matters with them, wouldn't he have also learned whether they were, or were not, actually "afraid"?

7

way similar to his own. Of course, as noted above, even if he had so stated, under the various authorities cited hereinabove, this still would have been insufficient to meet even the "relatively lenient" standard applicable here. *See Urresta, supra,* at *15*; Lin, supra,* at 510.[6]

Perhaps most importantly, though, Plaintiff's current declaration still does not specify any *common policy or plan* applicable to employees of the Madison Bistro restaurant generally. Indeed, Plaintiff's sole effort in this regard is an assertion that "[a]t least once a week, all of the employees would have to stay at work later than scheduled, and were not paid for the extra hours." Navarro Decl., ¶ 23. That assertion, however, lacks even the most basic details, and is entirely incredible on its face in light of the nature of Defendants' business, which involved multiple shifts. Plaintiff himself admits, for example, that he and his co-workers did not all work the same schedule. *See id.,* ¶ 7 (Plaintiff worked from 5 or 6 a.m. until 4 p.m.); ¶¶ 25, 28 (Tomas and Augustin purportedly worked from 10 a.m. until 10 p.m.). How could "all" employees have practically been required to "stay at work later than scheduled" when they weren't even all at work together to begin with? And if this had actually been true*,* why, again, can't Plaintiff state any the particulars – the day(s) of the week that "all" employees were purportedly required to stay late, until what time they were required to do so, and what "work" duties they were "all" supposedly required to do, purportedly without additional pay, during that time?

To be sure, again, not a single other affiant is presented to confirm, in *any* respect

---

[6]   And while Plaintiff again now claims he "complained" to Godard "the owner, about the fact that I was not getting paid my overtime" (Navarro Decl., ¶13), he still fails to state *when* he did so; *whether* he did so on one occasion, or on more than one; *what* specifically he complained about on each such occasion (if there was more than one); *whether* he ever followed up; *how much* he claims he was owed for that occasion (or any other); or anything else whatsoever about the particulars of even his own supposed complaint.

Of course, and as Defendant Godard has both previously and again now currently noted herein, no record exists of any such complaint, and he (Godard) never received any. *See* Godard Decl., ¶ 8; Second Godard Decl., ¶ 8. Plaintiff's assertion that he "complained," moreover, is contradicted elsewhere in his own declaration, where he states that he "never" told Mr. Godard his complaints. *See* Navarro Decl., ¶ 26.

whatsoever, Plaintiff's assertion in this regard, either.  No one corroborates, for example, whether: (a) any such requirement ever actually existed; (b) if so, what the particulars of any such requirement were; or (c) whether, indeed, he or she, or any other employee (including Plaintiff himself), was ever subjected to it.  All we have is Plaintiff's wholly unsupported assertion.

As previously noted in this case, though, the mere assertion that a policy exists, and that others are also subject to it, is not enough, without documentary or other evidence of both the existence of the policy, and its applicability to such others, to make the showing required for conditional certification.  *See Monger v. Cactus Salon & SPA's LLC,* 2009 U.S. Dist. LEXIS 60066 (E.D.N.Y. July 6, 2009).  *Accord Urresta, supra,* at *16-17 (citing cases).[7]  For example, where, as here, a plaintiff "presents nothing but limited anecdotal hearsay to suggest that there is a widespread practice . . . and no evidence whatever that this is pursuant to a policy," conditional certification of a collective action is properly denied.  *See Barfield v. New York City Health & Hosps. Corp.,* 2005 U.S. Dist. LEXIS 28884 *1 (S.D.N.Y. Nov. 18, 2005).

In sum, as with his original affidavit, all Plaintiff's current declaration contains are general and conclusory statements, several which even appear simply to have been lifted from other cases or filings.[8]  To properly ground a conditional certification motion, though, Plaintiff's supporting papers "must be specific, not conclusory."  *Lin, supra* (citations omitted).

---

[7]     Even Plaintiff himself has admitted this – twice.  *See, e.g.,* Plaintiff's Memoranda, each at 5 (courts require "substantial allegations that the putative class members were together the victims of a single decision, policy or plan . . . .") (citations omitted).

[8]     For example, Plaintiff states, "I sincerely hope this Court allows me, *as well as the other named Plaintiffs* in this case, to represent the interests of my co-workers in this action."  Navarro Decl., ¶ 31 (emphasis added).  *See also* Pl. Mem., at 2 ("FLSA claims are asserted on behalf of the named plaintiff**s**" (emphasis added)); at 7 ("the court should grant the named plaintiff**s**' motion")).  Of course, one need only look at the caption of this action (which, notably, Plaintiff himself has already once amended herein) to see that there are *no*  "other" named plaintiffs herein.

Similarly, even though Plaintiff himself makes no allegations regarding tips anywhere in either his original or amended complaint herein, or in either of his original or the instant renewed motion, tips are still discussed in his current memorandum in support.  *See id.,* at 1 ("common set of policies and practices . . . as to wages and hours, and *tips*" (emphasis added)).

9

"[C]onclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action." *Mendoza, supra*, at *4.

Put simply, therefore, Plaintiff is, as he was originally, without *any* support for his present motion. He has, as in *Lin, supra,*

> provide[d] no details regarding the "other employees" [he has] observed beyond the conclusory statements contained in [his] own declaration[] . . . and [has] failed to submit declarations from any non-plaintiffs stating th[ose details].

*Lin, supra,* at 512. He has thus presented *no* evidence whatsoever of the existence of any policy or plan, much less one which applied to all, or even any subgroup, of the various coworkers he names. Accordingly, "collective action certification . . . should be denied." *Id.,* at 513.

### III. Even Had Plaintiff Been Able to Identify An Unlawful Pay Policy or Practice, He Is Not "Similarly Situated" to Any of the Other Persons Whom He Seeks to Include In the Class

As previously noted, moreover, Plaintiff was also not "similarly situated" to any other coworker during his employment at Madison Bistro. As Defendant Godard's initial declaration, submitted as part of that opposition, and the Second Godard Declaration, which accompanies this memorandum, both make unequivocally clear, Plaintiff (and only Plaintiff) had two different, and independent, jobs: kitchen worker, and cleaner. *See* Godard Decl. ¶ 5; Second Godard Decl., ¶ 5. No other worker had comparable responsibilities or comparable hours. *See* Godard Decl., ¶ 6; Second Godard Decl., ¶ 6. Even Plaintiff's own sworn statements do not dispute this. *See generally* Navarro Aff.; Navarro Decl. None of Plaintiff's coworkers had the additional cleaning responsibilities that he did, much less a regular schedule, or an agreed-upon understanding, pursuant to which they performed, and were paid for, such additional duties. *See* Second Godard Decl., ¶¶ 5.6.

Likewise, no other worker at Madison Bistro was compensated similarly to Plaintiff. At the threshold, Plaintiff did not participate in the restaurant's tip pool. *Id.,* ¶ 3. He was therefore not "similarly situated" to those who did, and who were also subject to the reduced minimum wage rate legally and properly paid to "tipped staff," *i.e.,* the restaurant's waiters,

busboys, runners, bartenders and maitre d'. *Id.,* ¶ 7.[9] Plaintiff was also paid one rate for his kitchen work, and a different rate for his cleaning duties, unlike either his fellow back-of-house workers, or those in the "front of the house." All of these others were each paid a single rate – because they each performed only a single job. *Id*. Again, neither of Plaintiff's sworn statements dispute this. *See generally* Navarro Aff.; Navarro Decl.

Accordingly, because Plaintiff also nowhere identifies any unlawful work or pay policy or practice that was uniformly applied across all, or any, of these various groups (*i.e.,* front-of-house; back-of-house; tipped; non-tipped; food service workers; service employees; etc.), either with respect to work duties, or compensation, he has thus also failed to demonstrate – as he must – that he is sufficiently "similarly situated" to his former coworkers for this case to proceed as a collective action. The instant motion must therefore also be denied for this yet additional reason.

---

[9]  Further, and as the Court noted in *Lin, supra*, there are even material distinctions between *types* of tipped workers in the restaurant industry. For example, there are "food service workers," who are

> primarily engaged in the serving of food or beverages to guests, patrons or customers . . . including, but not limited to, wait staff, bartenders, captains and bussing personnel; and who regularly receive tips from such guests, patrons or customers. . . . [and who] must receive a base pay rate of no less than $4.65 per hour.

*Lin, supra,* at 509 (citing 12 N.Y.C.R.R. §§ 137-3.4(a), 137-1.5(e)). There are also "service employees," who are "other restaurant employees 'who customarily receive[] tips,'" but at a lower rate, and thus who "must be paid a base rate of at least" $4.90 or $5.65 per hour (depending upon their average per-hour tip rate). *Id.* (citing 12 N.Y.C.R.R. §§ 137-3.3(a)(4), 137-1.4(a)(5)).

Not only is Plaintiff in *neither* of these classifications – making him uniquely <u>not</u> "similarly situated" to any front-of-house worker – he fails to state anywhere within his various moving papers: (a) who among those he refers to *is* in one or the other such classification; (b) which of them is/are a "food service worker" and which is/are a "service employee"; or, most importantly, (c) anything whatsoever about how any of them are/were ever paid, whether with respect to the particular minimum wage applicable to them, or any other aspect of their compensation at all.

## Conclusion

For all of the foregoing reasons, Plaintiff's renewed motion for conditional certification should again be denied in its entirety.  This Court should also grant Defendants all of their costs, disbursements and attorneys' fees incurred in opposing both the instant motion and Plaintiff's original motion, as well as all such other and further relief in Defendants' favor, and against Plaintiff, as this Court deems just and proper.

Dated: New York, New York
April 12, 2013

Respectfully submitted,

ERIC M. NELSON (EN-4307)
Attorney at Law

_____\s_____
112 Madison Avenue, Sixth Floor
New York, New York  10016
Telephone: (212) 354-3666

Attorney for Defendants